*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DANE MICHAEL HAZELTON,

        Plaintiff-Appellee,

V

TONYA ROSE CAROLYN HAZELTON,

        Defendant-Appellant.

UNPUBLISHED
July 20, 2026
9:51 AM

No. 376598
Oakland Circuit Court
LC No. 2024-524746-DC

Before: MALDONADO, P.J., and RIORDAN and YOUNG, JJ.

PER CURIAM.

Defendant-appellant-mother, Tonya Rose Carolyn Hazelton, appeals as of right from the July 7, 2025 judgment granting plaintiff-appellee, Dane Michael Hazelton, sole legal and physical custody of the parties' minor children, SH and LH. We affirm.

## I. BACKGROUND

The parties divorced in 2019, and plaintiff was awarded the marital home. At the time of the divorce, SH was three years old. Under the consent judgment of divorce, the parties shared legal and physical custody of SH and had an equal parenting-time schedule. During the COVID-19 pandemic, however, the parties reconciled, began cohabiting, and LH was born.

The parties' relationship began to sour again and, in January 2024, plaintiff petitioned the trial court for exclusive use of the home and to decide custody and parenting. The parties agreed on a nesting arrangement in which the children remained in the home and one parent would not be present during the other's parenting time. A consent order was entered, but both parties failed to comply with the order. In February 2024, defendant was arrested and charged with domestic violence, MCL 750.81(1). Plaintiff was the complaining witness, and the trial court entered a personal protection order (PPO) against defendant. Defendant was granted supervised parenting time at Impact Counseling Services. The parties were ordered to submit to psychological evaluations with Friend of the Court (FOC) psychologist Stephanie Pyrros-Hensen, whose report would include a recommendation based on the best interests of the children. While the parties awaited Pyrros-Hensen's report, defendant was permitted to have supervised Facetime calls with the children and to attend SH's gymnastics classes once each week. However, because of issues

-1-

with defendant's behavior during gymnastics, the trial court revoked that privilege in August 2024. That October, defendant was acquitted of domestic violence after a bench trial in district court.

The custody hearing took place on December 17, 2024. Plaintiff sought sole legal and physical custody of the children. Defendant sought joint custody and equal, unsupervised parenting time. The custody hearing lasted several days, ending on February 28, 2025. Several witnesses, including the parties, testified, and plaintiff's testimony included an extensive history of defendant's aggressive behavior toward plaintiff and its impact on the children. The trial court found plaintiff's testimony credible. Further, video evidence, including Ring camera footage, recordings of Facetime calls, and body camera footage from the February 2024 arrest, were admitted into evidence. The trial court admitted Pyrros-Hensen's report into evidence, and Pyrros-Hensen testified at length about the contents of her report during the hearings.

Defendant called witnesses, including her close friend Kateri Hnat. During Hnat's testimony, defendant requested a break in the proceedings to use the bathroom and then text messaged Hnat in an attempt to influence her testimony. The trial court considered initiating contempt proceedings against defendant but instead explained that defendant's behavior undermined the credibility of both defendant and Hnat, which would in turn inform how the trial court would weigh their testimony.

After the close of proofs on February 28, 2025, the trial court took the matter under advisement and conducted *in camera* interviews with the children in March 2025. In the meantime, the trial court concluded that a graduated parenting-time schedule was in the children's best interests, and defendant's parenting time was expanded over the coming months according to a court-ordered schedule.

On May 30, 2025, the trial court issued a 37-page opinion and order. The trial court found proper cause or a change of circumstances existed as to SH, the children had established custodial environments with both parties, and the burden of proof was clear and convincing evidence. After giving great weight to Pyrros-Hensen's report and testimony, the trial court evaluated the best-interest factors, most of which favored plaintiff. The trial court concluded it was in the best interests of the children to grant plaintiff sole legal and physical custody. However, the trial court also ordered that defendant would have a graduated parenting-time schedule, which would permit her to have unsupervised and overnight parenting time in the months ahead. Defendant was also required to participate in, and benefit from, individual therapy. Judgment was entered on July 7, 2025, and this appeal followed.

## II. ANALYSIS

Defendant challenges Pyrros-Hensen's report, the trial court's consideration of defendant's aggressive behavior in the context of custody, and the trial court's best-interest findings. We consider these arguments in turn and conclude defendant is not entitled to relief on appeal.

### A. PRESERVATION AND STANDARDS OF REVIEW

Generally, for an issue to be preserved, it must be raised before the trial court. *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). Defendant's arguments concerning due process and the trial court's consideration of her aggressive conduct are unpreserved because they were not

raised before the trial court. *Reed v Reed*, 265 Mich App 131, 160; 693 NW2d 825 (2005). In a custody proceeding, we review unpreserved issues for plain error affecting substantial rights. *Quint v Quint*, ___ Mich App ___, ___; ___ NW3d ___ (2024) (Docket No. 368002); slip op at 6.

> To show that a plain error occurred warranting reversal, the following four elements must be established on appeal:
>
> > 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) the plain error affected substantial rights, and 4) once a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse. Reversal is warranted when the plain, forfeited error seriously affected the fairness, integrity or public reputation of judicial proceedings. [*Id*. at ___; slip op at 7 (quotation marks and citation omitted).]

With respect to defendant's arguments concerning the best-interest factors, "no specific objection is required to preserve a challenge to the trial court's finding or decision." *Kuebler v Kuebler*, 346 Mich App 633, 652 n 9; 13 NW3d 339 (2023). This Court applies three standards of review in custody cases. *Phillips v Jordan*, 241 Mich App 17, 20; 614 NW2d 183 (2000).

> The great weight of the evidence standard applies to all findings of fact. In a child custody dispute, all orders and judgments of the circuit court shall be affirmed on appeal unless the trial judge made findings of fact against the great weight of evidence or committed a palpable abuse of discretion or a clear legal error on a major issue. . . . A finding of fact is against the great weight of the evidence if the evidence clearly preponderates in the opposite direction. An abuse of discretion standard applies to the trial court's discretionary rulings such as custody decisions. An abuse of discretion, for purposes of a child custody determination, exists when the result is so palpably and grossly violative of fact and logic that it evidences a perversity of will, a defiance of judgment, or the exercise of passion or bias. Questions of law are reviewed for clear legal error. A trial court commits legal error when it incorrectly chooses, interprets or applies the law. [*Merecki v Merecki*, 336 Mich App 639, 644-645; 971 NW2d 659 (2021) (quotation marks and citations omitted).]

"The trial court's findings regarding the best-interest factors of MCL 722.23 are . . . reviewed under the great-weight-of-the-evidence standard." *Safdar v Aziz*, 342 Mich App 165, 176-177; 992 NW2d 913 (2022) (quotation marks and citation omitted). "These three deferential standards of review are part of the Legislature's comprehensive effort to promote the best interests and welfare of children." *Sabatine v Sabatine*, 513 Mich 276, 284; 15 NW3d 204 (2024) (quotation marks and citation omitted). When reviewing a trial court's custody decision, a reviewing court must remember that

> trial courts are in a superior position to make accurate decisions concerning the custody arrangement that will be in a child's best interests. Although not infallible, trial courts are more experienced and better situated to weigh evidence and assess credibility. Trial courts not only hear testimony and observe witnesses, but also

may elicit testimony, interview children, and invoke other judicial resources to assure a thorough and careful evaluation of the child's best interests. [*Id.* at 285 (quotation marks and citation omitted).]

### 1. PYRROS-HENSEN'S REPORT

Defendant first argues Pyrros-Hensen's report was improperly admitted into evidence because it contained hearsay. However, this issue has been waived. "Waiver" is "[t]he voluntary relinquishment or abandonment—express or implied—of a legal right or advantage." *Reed Estate v Reed*, 293 Mich App 168, 176; 810 NW2d 284 (2011). No "magic language" is necessary to effectuate a valid waiver. *Id*. Rather, a waiver exists if a reasonable person would have understood that he or she was waiving the interest in question. *Id*.

The trial court first informed the parties that they would be ordered to submit to a psychological evaluation pursuant to the creation of an FOC report at a hearing on March 6, 2024. Although defendant expressed her belief that a psychological evaluation was not necessary, she stated that she had no objection so long as both parties would be evaluated. In the March 18, 2024 order that followed, the trial court appointed Pyrros-Hensen and stated that "[a]ny report prepared by Stephanie Pyrros-Hensen will be considered, for the purposes of the application of MRE 1101, a Friend of the Court Report." The order went on to require the parties to "cooperate with the expert in all matters in connection with the evaluation including, but not limited to, scheduling and keeping appointments, providing information and submitting to psychological testing, or other means of assessment as the expert deems appropriate." The order further advised the parties that "[t]he written report of the expert may be received into evidence in the above-captioned proceedings. The parties waive any objection to the admissibility of hearsay statements contained in the reports, but retain the right to argue the issue of the weight, sufficiency and reliability of such evidence."

On April 24, 2024, defendant complied with the court's order by participating in a clinical interview with Pyrros-Hensen and completing the diagnostic psychological assessments that she administered. In total, the interview and assessments lasted for over three hours. Pyrros-Hensen's report was completed that September and later introduced as an exhibit at trial. When asked at trial whether she had any objection to the introduction of Pyrros-Hensen's report, defendant sought only to ensure that confidential information in the report was redacted. After clarifying that the personal information in the report would be redacted, the report was introduced into evidence without further comment.

By failing to object to the trial court's March 18, 2024 order and subsequently complying with that order by submitting to extensive psychological evaluation, a reasonable person would have understood that defendant was waiving the right to object to the report on hearsay. *Id*. Further still, defendant did not object to the contents of the report at any time between the completion of the report and the custody hearings after having been specifically advised by the trial court that the report might be introduced into evidence at trial. Defendant then relied on the contents of that report in her December 16, 2024 brief to emphasize plaintiff's "histrionic personality traits" and argue for joint custody. "A party may not waive objection to an issue and then argue on appeal that the resultant action was error." *Bonkowski v Allstate Ins Co*, 281 Mich App 154, 168; 761

NW2d 784 (2008). For these reasons, we conclude that this issue has been waived and decline to consider the issue further.

Next, defendant argues, even if the report was properly admitted into evidence, the trial court failed to make independent findings of fact and instead adopted Pyrros-Hensen's recommendations and findings wholesale. This argument is unsupported by the record.

The trial court may consider an FOC report in making its decisions, but it must nonetheless reach its own conclusions on properly received evidence. *Truitt v Truitt*, 172 Mich App 38, 42-43; 431 NW2d 454 (1988). And the trial court's 37-page opinion included many such findings of fact and conclusions of law. Although the trial court "emphasized the importance" of "Pyrros-Hensen's report and [gave] it great weight," the trial court was permitted to consider the report and afford it the weight the court deemed appropriate. *McIntosh v McIntosh*, 282 Mich App 471, 475; 768 NW2d 325 (2009) (stating that trial courts may consider psychological evaluations and "at their discretion, afford them the weight they deem appropriate"). The trial court also quoted, and adopted, some of Pyrros-Hensen's recommendations. But the trial court did so only after it reviewed the record and made findings of fact based on the evidence and the testimony presented at the custody hearing. See *Id*. at 477 ("[A] trial court may consider all the competent evidence presented at the hearing in arriving at its own custody decision.").

Contrary to defendant's arguments, this is not a case where the trial court failed to independently determine what custodial placement was in the best interests of the children. *Truitt*, 172 Mich App at 44 (concluding that the trial court clearly erred by simply reviewing and adopting the Friend of the Court's recommendations). In sum, the trial court did not consider Pyrros-Hensen's report to be conclusive on any one issue or child-custody factor. As indicated by its numerous factual findings and conclusions of law, the trial court understood the ultimate resolution of the child-custody dispute rested with the court, and it did not err by considering Pyrros-Hensen's report in light of all the other competent evidence presented and by concluding that some of Pyrros-Hensen's recommendations were appropriate.

Defendant next argues the trial court should not have given so much weight to Pyrros-Hensen's report because the report was not created "with fundamentally fair procedures." The procedures involved in the creation of the report were not fundamentally fair because plaintiff was permitted to "submit extensive materials to influence" Pyrros-Hensen, but defendant was "denied meaningful opportunity to provide contrary information." However, defendant's argument lacks factual support: She had the opportunity to submit certain records, including records of individual psychological counseling she had undergone, to Pyrros-Hensen. Despite Pyrros-Hensen requesting the records before her interview with defendant and during the interview, defendant never submitted them. Pyrros-Hensen testified she would have considered any evidence submitted by the parties or their counsel, and this Court has held that "a litigant should not be the beneficiary of his own questionable acts or inaction." *Curylo v Curylo*, 104 Mich App 340, 346-347; 304 NW2d 575 (1981). Notably, the record supports the finding that defendant submitted at least some information for Pyrros-Hensen's consideration, including a July 2023 baby-monitor video of plaintiff masturbating while LH slept nearby. Although Pyrros-Hensen was not permitted by the trial court to consider the July 2023 video, Pyrros-Hensen was aware of its contents and discussed the video with the parties during their interviews. When asked by defendant's counsel on cross-examination about it, Pyrros-Hensen testified plaintiff did not use "the best judgment," but his

-5-

behavior was not consistent "with any sort of . . . abusive behavior." We conclude that a due-process violation did not occur, and defendant is not entitled to relief on this argument.

## 2. CONSIDERATION OF DEFENDANT'S CONDUCT

Next, defendant likewise challenges on due process grounds the trial court's consideration of evidence relating to the PPO proceedings and her domestic violence charge, noting she was acquitted of that crime. However, evidence about the parties' relationship after the entry of the 2019 consent judgment of divorce was relevant. The circumstances leading to the PPO, a domestic violence incident for which defendant was arrested in February 2024, are pertinent in part because that incident led to defendant having supervised parenting time, as opposed to the equal and unsupervised parenting time she enjoyed before the arrest. Evidence of defendant's behavior and poor decision-making was also relevant to her parenting skills and ability to coparent with plaintiff. The fact that defendant was acquitted of domestic violence and the PPO expired in August 2024 does not render evidence of her behavior irrelevant for purposes of custody.

Additionally, defendant offers no authority to support the proposition that acquittal for domestic violence binds family courts when evaluating custody. Family courts and criminal courts apply different standards of proof. See *Cook v Auto Club Ins Ass'n*, 217 Mich App 414, 417-418; 552 NW2d 661 (1996) (noting the different burdens of proof in civil cases and criminal cases). Additionally, criminal and custody proceedings serve very different purposes. See *People v Gates*, 434 Mich 146, 162; 452 NW2d 627 (1990) (noting that the focus of a criminal proceeding is on the guilt or innocence of the accused). "Above all, custody disputes are to be resolved in the child's best interests." *Eldred v Ziny*, 246 Mich App 142, 150; 631 NW2d 748 (2001). This Court has held, in a custody proceeding, "[w]hether the alleged incidents of domestic violence that [a party] alleges occurred constitutes a credibility determination, and this Court defers to the trial court on such matters." *Rains v Rains*, 301 Mich App 313, 339; 836 NW2d 709 (2013). The trial court properly admitted and considered evidence concerning defendant's aggressive behavior. In so holding, we reject defendant's sweeping allegations of due-process violations because she had notice and an opportunity to be heard in the custody proceedings. *Cummings v Wayne Co*, 210 Mich App 249, 253; 533 NW2d 13 (1995) ("Due process in civil cases generally requires notice of the nature of the proceedings, an opportunity to be heard in a meaningful time and manner, and an impartial decisionmaker.").

## 3. THE TRIAL COURT'S FINDINGS AND OVERALL CUSTODY DETERMINATION

Next, defendant challenges the trial court's best-interest findings. When deciding custody, the trial court "must make specific findings of fact regarding each of the 12 statutory best-interest factors." *Johnson v Johnson*, 329 Mich App 110, 129; 940 NW2d 807 (2019). The best-interest factors are

> (a) The love, affection, and other emotional ties existing between the parties involved and the child.

> (b) The capacity and disposition of the parties involved to give the child love, affection, and guidance and to continue the education and raising of the child in his or her religion or creed, if any.

(c) The capacity and disposition of the parties involved to provide the child with food, clothing, medical care or other remedial care recognized and permitted under the laws of this state in place of medical care, and other material needs.

(d) The length of time the child has lived in a stable, satisfactory environment, and the desirability of maintaining continuity.

(e) The permanence, as a family unit, of the existing or proposed custodial home or homes.

(f) The moral fitness of the parties involved.

(g) The mental and physical health of the parties involved.

(h) The home, school, and community record of the child.

(i) The reasonable preference of the child, if the court considers the child to be of sufficient age to express preference.

(j) The willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent or the child and the parents. A court may not consider negatively for the purposes of this factor any reasonable action taken by a parent to protect a child or that parent from sexual assault or domestic violence by the child's other parent.

(k) Domestic violence, regardless of whether the violence was directed against or witnessed by the child.

(l) Any other factor considered by the court to be relevant to a particular child custody dispute. [MCL 722.23.]

"A court need not give equal weight to all the factors, but may consider the relative weight of the factors as appropriate to the circumstances." *Sinicropi v Mazurek*, 273 Mich App 149, 184; 729 NW2d 256 (2006). Courts "are duty-bound to examine all the criteria in the ultimate light of the child's best interests." *Id.* (quotation marks and citation omitted). However, "[t]he trial court need not necessarily engage in elaborate or ornate discussion because brief, definite, and pertinent findings and conclusions regarding contested matters are sufficient." *Foskett v Foskett*, 247 Mich App 1, 12; 634 NW2d 363 (2001), citing MCR 2.517(A)(2).

The trial court fulfilled its obligations under MCR 2.517(A) in its May 30, 2025 opinion, and trial court's findings with respect to factors (d), (f), (g), (j), and (k) were not against the great weight of the evidence.

"Factor (d) is properly addressed by considering the environments in which the child has lived in the past and the desirability of maintaining the continuity of those environments." *Demski v Petlick*, 309 Mich App 404, 448-449; 873 NW2d 596 (2015). After making extensive findings, the trial court found that factor (d) favored plaintiff, and this was supported by the record. The

children had a stable home with plaintiff, who testified he had no plans of relocating. Defendant lived in a rental home, which the children had never visited because defendant was only permitted to have supervised parenting time in certain locations. Although defendant argues the trial court used its orders concerning parenting time against her, the trial court was required to consider "[t]he length of time the child[ren] ha[d] lived in a stable, satisfactory environment, and the desirability of maintaining continuity." MCL 722.23(d). The fact that the children did not see defendant outside of a supervised setting after February 11, 2024, and had never been to her new home, was relevant. Notably, defendant never sought to appeal the trial court's parenting time orders predating the July 7, 2025 judgment, and she does not directly challenge them on appeal. Defendant's arguments concerning factor (d) lack merit.

Factor (f) requires the trial court to consider "moral fitness of the parties involved." MCL 722.23(f). "To evaluate parental fitness, courts must look to the parent-child relationship and the effect that the conduct at issue will have on that relationship." *Fletcher v Fletcher*, 447 Mich 871, 887; 526 NW2d 889 (1994). The issue under factor (f), however, "is not who is the morally superior adult"; rather, "[t]rial courts must look to the parent-child relationship and the effect that [any questionable] conduct . . . will have on that relationship." *Berger v Berger*, 277 Mich App 700, 712-713; 747 NW2d 336 (2008) (quotation marks and citation omitted). After considering defendant's charge for domestic violence and aggressive conduct toward plaintiff, the trial court found factor (f) favored plaintiff. We agree.

The trial court's findings were supported by the record evidence, including: (1) the parties' testimony; (2) audio and video recordings admitted into evidence; and (3) Pyrros-Hensen's testimony, report, and recommendations. Defendant destroyed Ring cameras and was verbally and physically aggressive toward plaintiff in the presence of the children. A Child Protective Services (CPS) investigation commenced after defendant's February 2024 domestic violence arrest. Pyrros-Hensen testified "a parent engaging in verbally aggressive or physically destructive behavior can be very traumatic for children." Additionally, plaintiff testified defendant disparaged him and blamed him for the custody proceedings in the presence of the children. According to Pyrros-Hensen, defendant's behavior caused SH to experience fear, confusion, and emotional distress. Based on her interview with SH, Pyrros-Hensen believed defendant "was sharing inappropriate things with [SH] and instructing her to do inappropriate things." Defendant also alienated plaintiff from the community and the staff and parents at SH's school, which impacted the children. During the custody hearing, defendant continued to blame others, including plaintiff, for her inappropriate behavior. She also attempted to influence Hnat's testimony while she was on the witness stand. In sum, the trial court's finding factor (f) favored plaintiff was not against the great weight of the evidence.

Factor (g) involves "[t]he mental and physical health of the parties involved." MCL 722.23(g). The trial court found this factor favored plaintiff. We conclude this finding was supported by the record evidence, including (1) the parties' testimony; (2) audio and video recordings admitted into evidence; and (3) Pyrros-Hensen's testimony, report, and recommendations. While defendant argues her psychological testing, like plaintiff's testing, did not reveal "any evidence of any dysfunction" or "pathology," defendant misunderstands Pyrros-Hensen's testimony. Pyrros-Hensen testified defendant was guarded and secretive during her interview and psychological testing, which could impact the results. Notably, defendant failed to

provide Pyrros-Hensen with her mental health records, and she was dishonest about her level of involvement in therapy in April 2024.

Defendant described herself to Pyrros-Hensen as "calm and nonconfrontational." She denied she "ever engaged in any sort of aggressive behavior in the relationship or property damage or damage to the home." These statements were entirely unsupported by the record. Pyrros-Hensen found defendant "had demonstrated an inability to manage her emotions and behavior," which was "based on" all of the information that [she] had received . . . from the parties, from records, and from [her] interview with [SH]." In sum, the evidence indicates that defendant had mental health issues she needed to address, which supports weighing factor (g) in favor of plaintiff.

Factor (j) considers "[t]he willingness and ability of each of the parties to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent." MCL 722.23(j). In *MacIntyre v MacIntyre (On Remand)*, 267 Mich App 449, 459; 705 NW2d 144 (2005), this Court upheld the trial court's finding factor (j) favored the father, where "[t]here [was] ample evidence to support the finding that [the mother] was unwilling to facilitate and encourage a close relationship between [the father] and the child." This Court noted the mother "denigrated [the father] in front of the child . . . , and interfered with [the father's] parenting time." *Id*. Conversely, the father did not "verbally attack" the mother, and he "allowed the child to stay with [the mother] when he had to go out of town during his scheduled parenting time." *Id*.

The trial court found factor (j) favored plaintiff, and this was not against the great weight of the evidence. The record has evidence that defendant was unwilling, or unable, to facilitate and encourage a close relationship between plaintiff and the children, particularly SH. Defendant denigrated and blamed plaintiff for the custody proceedings in front of the children. Pyrros-Hensen opined defendant encouraged SH to keep secrets from plaintiff, which was harmful to SH. Although defendant is correct the trial court did not specifically consider the testimony of certain witnesses, the trial court referenced their testimony and stated it considered all the testimony presented. A trial court's "findings and conclusions need not include consideration of every piece of evidence entered and argument raised by the parties." *MacIntyre*, 267 Mich App at 452.

With respect to factor (k), this Court has held "conduct that constitutes 'domestic violence' within the meaning of the domestic violence prevention and treatment act necessarily constitutes 'domestic violence' within the meaning of the [CCA]." *Brown v Brown*, 332 Mich App 1, 12 n 1; 955 NW2d 515 (2020). Domestic violence for custody purposes can include physical abuse and threats. *Id*. at 11-13. For example, in *MacIntyre*, 267 Mich App at 459, this Court affirmed a trial court's finding factor (k) favored the father, where "the child witnessed [the] mother physically attack [the] father, and [the] mother did not deny allegations of domestic violence."

The trial court found factor (k) favored plaintiff, which was not against the great weight of the evidence. As already discussed, the record includes some evidence of defendant behaving aggressively toward plaintiff in front of the children. Her aggressive behavior ultimately culminated in her February 11, 2024 arrest for domestic violence. Although she was acquitted of domestic violence, evidence of her aggressive behavior was still relevant in the custody proceeding for the reasons already explained. Notably, Pyrros-Hensen testified "a parent engaging in verbally aggressive or physically destructive behavior can be very traumatic for children." Moreover, contrary to defendant's arguments on appeal, this is not a case where the only evidence of

defendant's aggressive behavior was from Pyrros-Hensen's report and testimony. *Kuebler*, 346 Mich App at 665-666 (concluding that the trial court erred in part by admitting a therapist's opinion testimony that plaintiff was a victim of domestic violence where that opinion testimony was plaintiff's primary evidence of the abuse).

The trial court's findings were supported by (1) the parties' testimony; (2) audio and video recordings admitted into evidence; (3) transcripts and exhibits from the March 20224 PPO hearings, which the parties stipulated to admitting into evidence at the custody proceedings; and (4) Pyrros-Hensen's testimony, report, and recommendations. While the February 2024 PPO entered by the trial court expired in August 2024, this is not a case where the trial court found the PPO was improperly entered after reviewing the evidence of the incident in question. *Rains*, 301 Mich App at 339. Rather, in August 2024, the trial court placed the terms of the PPO into a civil injunction. The trial court's finding that factor (k) favored plaintiff was not against the great weight of the evidence.

In sum, the trial court considered well the facts and circumstances of this case. As found by the trial court, clear and convincing evidence established it was in the children's best interests for plaintiff to have sole legal and physical custody because (1) defendant was unable, or unwilling, to foster a healthy relationship between plaintiff and the children; (2) it was not safe for the children to be in defendant's care without certain protections in place, i.e., a graduated parenting-time schedule with mental health treatment for defendant; and (3) the parties could not agree about matters concerning legal custody during the proceedings without court involvement, i.e., SH's education. The trial court resolved the custody dispute in a manner that served the children's best interests. Contrary to defendant's arguments on appeal, this is not a case where the trial court focused on Pyrros-Hensen's report and defendant's domestic violence charge, to the exclusion of other relevant facts. *Snyder v Snyder*, 170 Mich App 801, 807; 429 NW2d 234 (1988); *Truitt*, 172 Mich App at 46-47. When deciding the children's best interests, the trial court properly considered all relevant facts of the case, including the parties' complicated relationship history.[1]

---

[1] Defendant appears to challenge the trial court's decision concerning parenting time. In so arguing, however, defendant does not cite any authority to support this argument or provide any meaningful analysis, rendering the argument abandoned. See *Innovation Ventures v Liquid Mfg*, 499 Mich 491, 518; 885 NW2d 861 (2016); *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 517; 892 NW2d 467 (2016). To the extent defendant argues the trial court improperly required her supervised-parenting time to continue indefinitely, the argument lacks merit and is directly in conflict with the trial court's graduated parenting-time schedule.

## III. CONCLUSION

We affirm.[2]  Plaintiff, being the prevailing party, may tax costs pursuant to MCR 7.219.


/s/ Allie Greenleaf Maldonado
/s/ Michael J. Riordan
/s/ Adrienne N. Young

---

[2] We acknowledge defendant argues reversal is necessary because of the trial court's "cumulative errors."  Because the trial court did not err, it is unnecessary to consider the cumulative-error argument.  And because remand is not required, it is also unnecessary to consider defendant's argument that we must remand to a different trial court judge for proceedings on remand.